**HERRICK MOTOR COMPANY, a corporation, Plaintiff-Appellant,**

v.

**FISCHER OLDSMOBILE COMPANY, Inc., Defendant-Respondent.**

No. 8666.

Springfield Court of Appeals.

Missouri.

Oct. 25, 1967.

Robert D. Durst, Springfield, for plaintiff-appellant.

Lilley & Cowan, Max W. Lilley, Springfield, for defendant-respondent.

PER CURIAM.

In this suit in equity for reformation of the cancellation paragraph of a lease, plaintiff lessor, Herrick Motor Company, a corporation, appeals from the decree finding the issues in favor of defendant lessee, Fischer Oldsmobile Company, Inc. By the lease sought to be reformed (hereinafter referred to as the *1964 Fischer lease*) which was executed under date of Februray 26, 1964, plaintiff let to defendant three contiguous tracts (hereinafter referred to as the leased premises) in Springfield, Missouri, for a term of three years from February 28, 1964, to February 28, 1967, at a monthly rental of $1,000. The cancellation paragraph in that lease provided: "The Lessee may cancel this lease on March 1, 1964, or at any time thereafter, by giving Lessor Sixty (60) days written notice prior to such cancellation *or* upon the payment of Two Thousand Five Hundred Dollars ($2,500.00) to Lessor." (All emphasis herein is ours.)

In Count I of plaintiff's "Amended Petition to Reform Contract," upon which the case was tried, it was averred that "plaintiff, as lessor, and defendant, as lessee, entered into an agreement and (sic) for the lease of the building" on the leased premises (an automobile showroom and garage constructed in 1951) "for a term of three years * * * and mutually agreed upon a cancellation provision" in the same language as that quoted above, excepting only for substitution of the conjunction *"and"* for the italicized disjunctive particle *"or."* Plaintiff further asseverated that the cancellation paragraph "was incorrectly written and did not express the intent or actual agreement of the parties, but was *a mutual mistake of fact* in the writing therein of *'or'* instead of *'and'* "; and that such "mistaken and erroneous insertion of the word ('or') instead of ('and') was first observed by plaintiff after the attempted cancellation of the lease [by defendant lessee giving sixty days' written notice thereof on March 31, 1965] and the refusal of the defendant to pay" $2,500 *in addition to* the rental for sixty days thereafter. The prayer of Count I was for a decree "directing and compelling defendant to execute a new and reformed contract which shall properly contain the word *'and'* instead of *'or,'* or if said defendant fails to do so that the court make a finding that the agreement of the parties * * * include the word *'and'* in lieu of *'or,'* and that the said contract be reformed by the court to comply with the mutual intent of both parties * * * and for such other relief including costs, as to the court seems just and proper."

In Count II of said amended petition, plaintiff first incorporated by reference [Rule 55.14] *all* of the above allegations in Count I clearly intended to plead a cause of action for reformation on account of *"a mutual mistake of fact,"* and then added other averments just as plainly designed to plead a cause of action for reformation on the ground of *defendant's fraud,* to wit, that "said lease and contract as written was erroneously, improperly and incorrectly drawn by defendant and was contrary to agreement between the parties and was written by defendant or defendant's agent *with the intent to defraud the plaintiff* of it's (sic) benefits under the agreement by changing the word 'and' * * * to the word 'or' and said *deceitful action of the defendant* did in fact mislead and decieve (sic) the plaintiff." (All references to rules are to the Supreme Court Rules of Civil Procedure,

V.A.M.R.) The prayer of Count II was for a decree "finding that the actual and correct agreement of the parties * * * included the word *'and'* and not *'or'* and that the said contract be reformed by the court to comply with the actual agreement of all the parties thereto * * * and for such other relief including costs as to the court seems just and proper."

On *August 24, 1966,* the issues joined upon plaintiff's amended petition and defendant's answer thereto were tried and, written findings of fact and conclusions of law having been requested, the cause was taken under advisement. On *December 8, 1966,* the court filed such written findings of fact and grounds for decision [Rule 73.-01(b)], covering thirteen pages in the transcript on appeal, which included an accurate and comprehensive review of the facts, a sound and scholarly exposition of applicable legal principles, and the well-reasoned conclusion that "judgment should be in favor of defendant and against plaintiff on each count of plaintiff's amended petition." On *December 19, 1966,* plaintiff filed its motion for new trial, which closed with the prayer that the court "find for plaintiff and against the defendant *on both counts of plaintiff's amended petition* * * or in the alternative * * * grant a new trial in this case."

While plaintiff's motion for new trial was pending, to wit, on *January 6, 1967,* plaintiff filed its "Motion to Amend Pleadings and for Judgment" (hereinafter referred to as the motion to amend) in which it sought leave (1) to amend the *prayers* of Counts I and II of its amended petition "by adding at the end of [each prayer] the words 'and for judgement (sic) in the amount of Twenty-Five Hundred Dollars ($2,500.00),' " and (2) to add Count III to the amended petition (a) declaring "that the only reasonable and logical interpretation of the word 'or' as contained in [the cancellation paragraph] is as a conjunctive rather than as a disjunctive and therefore the defendants (sic) are obligated to pay to

the plaintiffs (sic) Twenty-Five Hundred Dollars ($2,500.00), in accordance with the terms of this lease" and (b) praying for a "decree of this court interrupting (sic) the word 'or' as contained in [the cancellation paragraph] as a conjunctive rather than as a disjunctive and for judgement (sic) against defendant in the amount of Twenty-Five Hundred Dollars ($2,500.00) * * *." In the language of its brief, plaintiff thereby sought *"to reform* [the cancellation paragraph] * * * *by an interpretation of the word 'or' to mean 'and' or 'and also,'* and judgment for $2,500."

On *January 12, 1967*, the court entered an order overruling plaintiff's motion to amend and then its motion for new trial. On *January 16, 1967,* plaintiff filed its notice of appeal "from the judgment of the Circuit Court, Division III, Greene County, Missouri, entered in this action on the 8th day of December, 1966"; and, on the same day, plaintiff's counsel delivered to the court reporter an order in writing for the transcript on appeal. Rule 82.19.

Two days later, to wit, on *January 18, 1967,* the court "on its own motion [reconsidered] its ruling made on 1–12–67 overruling plaintiff's motion to amend pleadings * * * [sustained] said motion's request for leave to amend 1st amended petition by adding Count III * * * [considered] Count III on the evidence and [rendered] judgment in favor of defendant and against plaintiff on Count III * * *." On *January 25, 1967,* plaintiff filed another motion for new trial, closing with the prayer that the court "find for plaintiff and against defendant on each of the three counts of plaintiff's amended petition * *," which said motion was overruled by order entered on *February 3, 1967.*

From the foregoing resume, it will be seen that, when the case was tried upon the first amended petition, plaintiff sought *reformation* of the cancellation paragraph in the 1964 Fischer lease on the ground of either an *alleged mutual mistake of fact* or *defendant's alleged fraud.* Subsequent to

trial of the case on August 24, 1966, entry of judgment for defendant on December 8, 1966, and the filing of plaintiff's motion for new trial on December 19, 1966, plaintiff sought leave, by its motion to amend filed on January 6, 1967, to plead and recover on still another ground of reformation, characterized in the language of plaintiff's brief as *"to reform* [the cancellation paragraph] * * * *by an interpretation of the word 'or' to mean 'and' or 'and also,'* and judgment for $2,500." By its order of *January 12, 1967,* overruling the motion to amend, the court refused to permit this after-trial introduction of a third theory; and, its motion for new trial also having been overruled on *January 12,* plaintiff thereafter filed on *January 16* its notice of appeal *"from the judgment * * * entered in this action on the 8th day of December, 1966."* Of course, neither the court's findings and judgment of December 8 nor plaintiff's motion for new trial of December 19, 1966, mentioned or referred to plaintiff's motion to amend subsequently filed on January 6, 1967. So plaintiff's notice of appeal could not reasonably be construed as invoking or authorizing appellate review of the court's order of January 12, 1967, overruling the motion to amend; and, in any event, no assignment of error with respect to the overruling of that motion was preserved for appellate review. Rule 79.03.

We are mindful that, *after* the filing of plaintiff's notice of appeal on January 16, 1967, to wit, on January 18, the court sua sponte undertook to "[reconsider] its ruling made on 1–12–67 overruling plaintiff's motion to amend pleadings," grant leave to amend plaintiff's first amended petition by adding Count III, consider that count "on the evidence," and then "[render] judgment in favor of defendant and against plaintiff on Count III." However, the judgment of December 8, 1966, became final when the trial court overruled plaintiff's motion for new trial on January 12, 1967 [Rule 82.05(a)]; and the timely filing of plaintiff's notice of appeal on January 16,

accompanied by payment of the docket fee [Kattering v. Franz, 360 Mo. 854, 231 S.W. 2d 148(2)], was the only requirement necessary to invoke appellate jurisdiction and make the appeal "effective." Rule 82.04; Whealen v. St. Louis Soft Ball Ass'n, 356 Mo. 622, 624, 202 S.W.2d 891, 893(1); Weller v. Hayes Truck Lines, 355 Mo. 695, 700, 197 S.W.2d 657, 660(4). Although the trial court was not thereby divested of jurisdiction over its *records* [Kansas City v. Jones Store Co., 325 Mo. 226, 244, 28 S.W. 2d 1008, 1013(10), certiorari denied 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771; Bailey v. Bailey, Mo.App., 317 S.W.2d 636, 637(1)] or of authority to exercise functions "of a merely *ministerial* or *executive* character" [State ex rel. Patton v. Gates, 143 Mo. 63, 68, 44 S.W. 739, 741] prior to filing of the transcript on appeal (e. g., approving a supersedeas bond [Rule 82.09(a)], permitting the filing thereof after expiration of the period originally designated [Rule 82.10], or extending the time for filing the transcript on appeal [Rule 82.19]), the effective filing of the notice of appeal did suspend further exercise of *judicial* functions by the trial court [Niedringhaus v. Wm. F. Niedringhaus Inv. Co., Mo.App., 54 S.W.2d 79, 80–83, certiorari quashed State ex rel. Williams v. Daues, 334 Mo. (banc) 91, 66 S.W.2d 137; Case v. Smith, 215 Mo. App. 621, 628, 257 S.W. 148, 150–151(6)] and it did thereby lose jurisdiction of the *case.* Kansas City v. Jones Store Co., supra, 325 Mo. at 245, 28 S.W.2d at 1013; Vaughn v. Kansas City Gas Co., 236 Mo.App. 669, 674, 159 S.W.2d 690, 693.

The post-appeal order and judgment of *January 18, 1967,* in which the trial court undertook to consider Count III (i. e., plaintiff's so-called theory of *reformation by interpretation*) "on the evidence" and to render judgment thereon, and likewise the subsequent order of *February 3* overruling plaintiff's post-appeal (second) motion for new trial filed on *January 25,* were unauthorized [Alchian v. Fadler, 240 Mo.App. 610, 615, 212 S.W.2d 78, 81(1); Case v.

Smith, supra, 215 Mo.App. at 628, 257 S.W. at 150–151(6)]; and plaintiff's notice of appeal theretofore filed on *January 16, 1967,* neither invoked nor permitted appellate review of the aforesaid post-appeal orders and judgment by which the trial court undertook to consider and rule "on the evidence" plaintiff's theory of *reformation by interpretation.* Abernathy v. Coca-Cola Bottling Co. of Jackson, Mo.App., 370 S.W. 2d 175, 179(6).

■ With the case in this posture as it was lodged here, plaintiff properly might have sought appellate review on the two theories pleaded in his first amended petition upon which the case was tried, to wit, reformation for an *alleged mutual mistake of fact* or *defendant's alleged fraud;* but, as is demonstrated and established by the "Points and Authorities" in plaintiff's brief, neither of those theories is presented or relied on here. In the first three "Points" in its brief, plaintiff simply complains that the trial court erred (1) in overruling plaintiff's timely (first) motion for new trial filed on *December 19, 1966,* (2) in overruling its motion to amend filed on *January 6, 1967,* and (3) in overruling its post-appeal (second) motion for new trial filed on *January 25, 1967.* Those "Points" are framed in utter disregard of the controlling requirement that points relied on shall state not only what actions or rulings of the court are sought to be reviewed but also *"wherein and why* they are claimed to be erroneous" [Rule 83.05, subds. (a) (3) and (e)] and present nothing for appellate review. Fitch v. Star-Times Pub. Co., Mo., 263 S.W.2d 32, 33(1); Marlo Coil Corporation v. Grand Park Corporation, Mo.App., 348 S.W.2d 610, 612–613(4); Onka v. Butkovich, Mo.App., 294 S.W.2d 357(2). See Walker v. Thompson, Mo., 338 S.W.2d 114, 116–117(6, 7).

■ The last "Point" in plaintiff's brief is that: "IV. The trial court erred in not following the well established law in Missouri that the word 'or' will be *construed* to mean 'and' where the instrument from its four corners requires such *construction* and the Missouri law that the word 'or' will be *interpreted* to mean 'and' whenever required to carry out the plain purpose of the contract, and when to adapt (sic) the literal meaning would defeat the purpose of the contract or lead to an absurd result." In answer to defendant's-respondent's motion to dismiss the appeal for failure to comply with Rule 83.05, plaintiff's counsel insists that we should overrule the motion because this is an equity case reviewable de novo on appeal [Rule 73.01(d); 3 West's Missouri Digest, Appeal and Error, ■ and there is but a "single obvious question" [Milanko v. Austin, 362 Mo. 357, 362, 241 S.W.2d 881, 882(2), certiorari denied 342 U.S. 906, 72 S.Ct. 298, 96 L.Ed. 678; McQuate v. White, Mo., 389 S.W.2d 206, 210 (1)] which is readily discernible from, and adequately posed by, the above-quoted Point IV and the succeeding "Argument." But, in thus seeking to avoid being cast onto Scylla on the one hand, plaintiff has overlooked the peril of being drawn into Charybdis on the other hand. For, in suits in equity as in actions at law, a party is bound on appeal by the position he took in the trial court [Johnson v. Duensing, Mo. (banc), 332 S.W.2d 950, 957(13); Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 732, 136 S.W. 673, 678; Cook v. Bolin, Mo. App., 296 S.W.2d 181, 184(5)] and an appellate court will not review a case upon a theory different from that upon which it was tried nisi. Voelker v. St. Louis Mercantile Library Ass'n, Mo., 359 S.W. 2d 689, 693(2); Kenner v. Aubuchon, Mo., 280 S.W.2d 820, 826(1); Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 242(4).

■ As we have seen, plaintiff pleaded and tried the case as one for *reformation* of the cancellation paragraph of the 1964 Fischer lease on account of either *mutual mistake of fact* or *defendant's fraud,* but neither of those theories has been preserved or presented on appeal. Rather, the above-quoted Point IV simply seeks *construction* or *interpretation* of the cancellation para-

graph,[1] apparently intended to invoke appellate review on plaintiff's so-called theory of *reformation by interpretation,* i. e., *"by an interpretation of the word 'or' to mean 'and' or 'and also,'"* which plaintiff unsuccessfully sought to interject by its untimely after-trial and after-judgment motion to amend by adding Count III to the first amended petition.

■ Actually, this so-called theory of *reformation by interpretation* is not one of *reformation,* that being the "[r]emedy, afforded by courts of equity to the parties, to written instruments which import a legal obligation, to reform or rectify such instruments whenever they fail, *through fraud or mutual mistake,* to express the real agreement or intention of the parties." Black's Law Dictionary, 4th Ed., p. 1446. See 76 C.J.S. Reformation of Instruments § 30, p. 374; 36A Words and Phrases, Reformation, pp. 188–189. That plaintiff has, in truth, altogether abandoned its theories of reformation for mutual mistake of fact or fraud, upon which the case was tried and determined, is graphically demonstrated by several statements in plaintiff's post-submission "memorandum" filed by leave of court, e. g., (a) this case "is different from most decisions concerning reformation," (b) "in one sense of the word appellant [plaintiff] is asking the court to sustain the contract as written," (c) "the only thing appellant really asks is that [the cancellation paragraph] be given a sensible and reasonable meaning in conformity with the established law with reference to the meaning of 'or' and 'and,'" and (d) "in most reformation cases the language is clear, one of the

parties is trying to change the language of the written lease, whereas in [this] case we are asking the court to correctly read and correctly interpret the language contained in the lease." As in Husted v. Van Ness, 1 App.Div. 120, 36 N.Y.S. 1043, 1045, affirmed 158 N.Y. 104, 52 N.E. 645, "[w]hat the plaintiff really wants is not a reformation of the instrument, but a judicial construction of its meaning." In this connection, see 3 Corbin on Contracts, § 540, p. 84, Reformation of Contract Distinguished from Interpretation.

■ ■ It has been said that equity will not entertain an action brought nominally to reform an instrument but really to obtain judicial construction thereof. Moore v. Hamilton, 93 W.Va. 529, 117 S.E. 229, 231 (2); Husted v. Van Ness, supra, 36 N.Y.S. at 1045, affirmed 52 N.E. at 646(3); 76 C.J.S. Reformation of Instruments § 4, p. 329. But regardless of that, plaintiff's *present* so-called theory of *reformation by interpretation* undoubtedly is quite different from its theories of *reformation for mutual mistake of fact or fraud,* upon which the case was pleaded, tried and determined nisi; and, having thus switched ponies in the middle of the judicial stream, plaintiff is not entitled to appellate review on its changed theory. This is dispositive of the appeal even though defendant's-respondent's motion to dismiss for failure to comply with Rule 83.05 be overruled.

However, since we have, ex gratia, carefully considered the case on its merits, we briefly record our views with respect thereto. When the automobile showroom

---

1. Strictly speaking, *interpretation* and *construction* of written instruments are not the same, in that interpretation is concerned only with ascertaining the sense and meaning of the subject-matter or form of words and *stops at the written text,* while construction is a term of wider scope which signifies determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances. Dorrance v. Dorrance, 242 Mo. 625, 644, 148 S.W. 94, 98; Black's Law Dictionary, 4th Ed., p. 954. See 22 Words and Phrases, Interpretation—Construction distinguished, p. 384. However, it has been said that these terms "are so alike in their practical results, and are used so interchangeably, as to have become almost synonymous." Russell v. Ayer, 120 N.C. 180, 27 S.E. 133, 140, 37 L.R.A. 246. They seem to have been so used by plaintiff's counsel in the instant case, and the distinction in meaning is unimportant here.

and garage were constructed on the leased premises in 1951, plaintiff was the authorized Oldsmobile agency in Springfield. In *1953,* Douglas Oldsmobile Company, a corporation, became the authorized Oldsmobile agency and, as lessee, took possession of the leased premises under a *five-year* lease (*the 1953 Douglas lease*) executed by plaintiff, as lessor, which provided for a monthly rental of *$1,250* and granted to Douglas the right to cancel on December 1, 1956, or thereafter "by giving Lessor sixty (60) days written notice prior to such cancellation *and* upon the payment of *Seven Thousand Five Hundred Dollars ($7,500.00)* to Lessor." In *1958,* plaintiff as lessor and Douglas as lessee entered into a *three-year* lease of the same premises (*the 1958 Douglas lease*) which provided for the same monthly rental of *$1,250* and granted to Douglas the right to cancel on December 1, 1958, or thereafter "by giving Lessor Sixty (60) days written notice prior to such cancellation *or* upon the payment of *Two Thousand Five Hundred Dollars ($2,500.00)* to Lessor." In *1961,* shortly after the death of Douglas' president, defendant Fischer became the authorized Oldsmobile agency, and plaintiff and defendant entered into a *three-year* lease (*the 1961 Fischer lease*) which provided for a reduced monthly rental of *$1,000* and granted to defendant the right to cancel on June 1, 1961, or thereafter *on precisely the same terms as those in the 1958 Douglas lease,* i. e., "by giving Lessor Sixty (60) days written notice prior to such cancellation *or* upon the payment of *Two Thousand Five Hundred Dollars ($2,500.00)* to Lessor." And the cancellation paragraph in *the 1964 Fischer lease* under consideration (as quoted in toto in the initial paragraph of this opinion) granted to defendant the right to cancel on March 1, 1964, or thereafter *on precisely the same terms as the above-quoted terms in the 1958 Douglas lease and in the 1961 Fischer lease.*

Thus, under the 1958 Douglas lease lessor Herrick simply was assured that, in the event of cancellation, it would receive an amount not less than the equivalent of the stipulated rental for sixty days, and the cancellation paragraphs of the 1961 Fischer lease and the 1964 Fischer lease worked the same result and provided the same assurance to lessor. It is noted in passing that, upon trial of the instant case, *plaintiff* produced the *1953* Douglas lease and both of the Fischer leases but that the *1958* Douglas lease was produced by *defendant* after Everett Herrick, plaintiff's president and principal witness, who handled "most" of the corporate business, did "most of the negotiating" of all leases, and on behalf of the corporation executed all of them excepting only the 1961 Fischer lease, insisted that "I don't have a copy of that '58 lease."

Everett, as well as his brothers Ira, vice-president, and Sam, secretary, were mature businessmen who had been engaged in the operation of an automobile agency for many years. The cancellation paragraph was the last numbered paragraph in each of the leases, followed only by a short two-line or three-line "Conclusion" paragraph. Ira, who executed the 1961 Fischer lease on behalf of plaintiff corporation, first stated that "I read the [1961] lease" before he lost his recollection on this subject immediately following an "objection" by plaintiff's counsel that "the witness ought to be thoroughly aware of what he's talking about * * * particularly when he's contradicting himself." Although Everett "didn't read [the 1964 Fischer lease] word for word" before he signed it, he admittedly "glanced over it." Avowing ignorance that the disjunctive "or" and not the conjunctive "and" had been used in the cancellation paragraph, Everett glossed over his professed failure to read the 1964 Fischer lease more carefully with the comment that "I had no reason to." Significantly, as the trial chancellor thought and we agree, after defendant gave notice of cancellation on March 31, 1965, nothing was said by any of plaintiff's officers about defendant's alleged liability for payment of an addition-

al $2,500, until some time after defendant had vacated the leased premises about May 31, 1965, and had moved into another building. Compare Dildine v. Rimpson, Mo.App., 240 S.W.2d 214, 221, 223.

 As exemplified by cases cited in plaintiff's brief, there are situations in which "or" properly may be construed as "and" where that is necessary to effectuate the intention of the parties as gathered from the four corners of the instrument [e. g., Garrett v. Damron, Mo., 110 S.W.2d 1112, 1116(7); Jones v. Haines, Hodges & Jones Bldg. & Development Co., Mo. App., 371 S.W.2d 342(6); Weisman v. Continental Life Ins. Co., 216 Mo.App. 13, 19, 267 S.W. 21, 23(2)] or where that is required to carry out the plain purpose of the instrument and adoption of the literal meaning would defeat that purpose or lead to an absurd result. Ex parte Lockhart, 350 Mo. 1220, 1234, 171 S.W.2d 660, 666(21). See Hurley v. Eidson, Mo.(banc), 258 S.W.2d 607, 608(1). But, while "or" may be sometimes so used as to mean "and", it is disjunctive in its very nature [Jenkins v. Meyer, Mo., 380 S.W.2d 315, 321] and its ordinary use is as a disjunctive particle [State v. Combs, Mo., 273 S.W. 1037, 1039] that marks an alternative corresponding to "either," as "either this or that." Dodd v. Independence Stove & Furnace Co., 330 Mo. 662, 671, 51 S.W.2d 114, 118(9); State v. McGee, 336 Mo. 1082, 1101, 83 S.W.2d 98, 110(42); Hanley v. Carlo Motor Service Co., Mo. App., 130 S.W.2d 187, 191(7); Boland v. Byrne, Mo.App., 145 S.W.2d 755, 757(4). To the same effect, see Drainage Dist. No. 1 of Bates County v. Bates County, Mo., 216 S.W. 949, 953(12); Rust v. Missouri Dental Board, 348 Mo. 616, 627, 155 S.W.2d 80, 85(10); Sheets v. Thomann, Mo.App., 336 S.W.2d 701, 710(12). Considering the 1964 Fischer lease in its entirety and taking the record as a whole, we find neither reason nor justification for construing "or" in the cancellation paragraph of that lease other than in its natural and ordinary sense as a disjunctive particle

marking an alternative corresponding to "either." Hence, if plaintiff's so-called theory of reformation by interpretation had been preserved and presented for appellate review on its merits, we would have been constrained to rule it against plaintiff.

Defendant's motion to dismiss the appeal is overruled and the judgment nisi for defendant is affirmed.

All concur.